UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROADRUNNER CHARTERS, INC., Plaintiff, -v- NEW YORK CITY, et al., Defendants. | 25-CV-01285 (JAV) OPINION AND ORDER |

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Roadrunner Charters, Inc. ("Plaintiff") brought this action against New York City and the Commissioner of New York City Department of Social Services ("Defendants"). Before the Court is Defendants' Motion to Dismiss the Amended Complaint (the "Motion"). ECF No. 34. For the reasons that follow, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

### A. Factual Background

The following facts, taken from Plaintiff's Amended Complaint and attached exhibits, are accepted as true and construed in the light most favorable to Plaintiff for the purposes of the Motion. *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

Plaintiff is an interstate motor carrier with the Federal Motor Carrier Safety Administration ("FMCSA"). ECF No. 27 ("Am. Compl."), ¶ 7. As an FMCSA motor

carrier, Plaintiff operates as an instrument of interstate commerce when providing interstate passenger transportation services to the public for hire. *Id.*, ¶ 19.

In or around November 2024, Plaintiff learned that the Texas Department of Emergency Management sought to purchase interstate passenger transportation services from FMCSA motor carriers through a program called "Project Lonestar." *Id.*, ¶ 9. The purpose was to relocate migrants who had illegally crossed the southern border of the United States into Texas to other states. *Id.* In late 2024, Plaintiff entered into a contract with the Texas state government through Project Lonestar, pursuant to which Plaintiff would be paid to transport migrants who had crossed into Texas to various locations in the United States, including New York. *Id.*, ¶¶ 9-11, 14.

Defendants filed a lawsuit in New York state court, in which Plaintiff and 16 other motor carriers providing similar services for Texas were named as defendants. *Id.*, ¶ 21. Defendants' complaint alleged that the transportation of tens of thousands of migrants to New York as part of Project Lonestar had violated Section 149 of the New York Social Services Law ("Section 149"), which requires that "[a]ny person who knowingly brings, or causes to be brought a needy person from out of state into [New York] for the purpose of making him a public charge . . . shall be obligated to convey such person out of state or support him at his own expense." ECF No. 27-2, ¶¶ 5-6 (quotation marks omitted); *see also* Am. Compl., ¶¶ 26-29. The lawsuit sought approximately $708 million in damages for the care of the

33,000 indigent migrants transported to New York under Project Lonestar. Am. Compl., ¶¶ 34, 36.

As a result of the threat the lawsuit posed to its continuing financial viability, Plaintiff ceased its busing operations with Texas in breach of its contract. *Id.*, ¶¶ 36, 37, 79. Texas reassigned the work to be performed by Plaintiff to other transportation carriers. *Id.*, ¶ 38.

The Supreme Court of the State of New York ultimately held that Section 149 was unconstitutional and dismissed the state lawsuit. ECF No. 27-3 at 8. The state court concluded that Section 149 violated the Commerce Clause and infringed on the constitutional right to travel. *Id.* at 6-8.

**B. Procedural History**

On or about February 12, 2025, Plaintiff initiated this action against Defendants. *See* ECF No. 1. Defendants filed a motion to dismiss on August 13, 2025. *See* ECF No. 20. The Court set a deadline for Plaintiff to file an amended complaint and warned that "there will likely not be any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 22. Plaintiff amended the complaint and filed what is now the operative pleading on September 17, 2025. *See* Am. Compl.

In the Amended Complaint, Plaintiffs assert claims for tortious interference with contractual relations, tortious interference with contract, abuse of civil process, and a violation of constitutional rights under 42 U.S.C. § 1983. Am. Compl., ¶¶ 72-95. Defendants move to dismiss the Section 1983 claim for lack of subject matter

jurisdiction under Rule 12(b)(1) and the remaining claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 34.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss an action when it "'lacks the statutory or constitutional power to adjudicate it,' such as when the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.A.R.L.*, 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). When a motion to dismiss under Rule 12(b)(1) is "based solely on the allegations of the complaint or the complaint and exhibits attached to it," a district court must "determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up).

### B. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025). "[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Revitalizing Auto Cmtys.*

*Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) (citation omitted).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a formulaic recitation of a cause of action's elements[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Cos., Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

## DISCUSSION

Plaintiff's Amended Complaint consists of four claims: (1) tortious interference with contractual relations, (2) tortious interference with contract, (3) abuse of process, and (4) violation of constitutional rights under Section 1983. Defendants move for dismissal of the fourth claim under Rule 12(b)(1) for lack of standing, and for the other three claims to be dismissed under Rule 12(b)(6) for failure to state a claim. ECF No. 35 ("Def. Mem.") at 2-3. The Court first addresses

the challenge to subject matter jurisdiction before assessing whether the remaining three counts state a claim for relief.

**A. Section 1983 Claim**

Plaintiff claims that in attempting to enforce an unconstitutional state law, and thereby subjecting Plaintiff to a substantial financial burden, Defendants infringed on Plaintiff's "right to operate freely in interstate commerce." Am. Compl., ¶ 94. Plaintiff seeks to hold Defendants liable for this alleged deprivation of constitutional rights under 42 U.S.C. § 1983. *Id.*, ¶¶ 88-90. Defendants argue that Plaintiff does not possess standing to bring this claim. *See* Def. Mem. at 22.

The question of Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The plaintiff bears the burden of plausibly alleging Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (cleaned up).

Plaintiff has alleged facts sufficient to establish Article III standing. The motion to dismiss for lack of subject matter jurisdiction is therefore denied.

### 1. Injury in Fact

An injury in fact is "a concrete and particularized, actual or imminent invasion of a legally protected interest," not merely a "conjectural or hypothetical" injury. *Lujan*, 504 U.S. at 560 (cleaned up). This requirement is meant to "confirm that the plaintiff has a personal stake in the controversy." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).

According to the Amended Complaint, Plaintiff was a named party in Defendants' state court lawsuit. Am. Compl., ¶ 21; *see* ECF No. 27-2, ¶ 31. The potential damages award, if the suit were to succeed, threatened Plaintiff's ongoing financial stability. Am. Compl., ¶¶ 36-38. To avoid that potentially calamitous outcome, Plaintiff was forced to cease its busing operations with Texas, losing a valuable contract and all profits associated with that contract. *Id.*

The loss of the contract with Texas is a concrete injury because it is "real, and not abstract," and it is particularized because it "affect[ed] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339-40 (cleaned up). The cases relied upon by Defendants involve future and speculative injuries rather than harms that have already been incurred. Def. Mem. at 23. But there is nothing speculative or forward-looking about Plaintiff's claimed injury. The alleged harm, the loss of the contract, has already occurred.

Defendants also cite *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013), for the proposition that "mere conjecture about possible government actions" is insufficient to establish an injury in fact. Def. Mem. at 23. But the state court

lawsuit was not a "possible government action"—the lawsuit was filed. Defendants moved for an injunction from the state court and sought to impose costs on Plaintiff and the other motor carriers. ECF No. 27-1 at 2. Plaintiff ceased transporting migrants as a result of Defendants' actions, thereby losing its contract with the State of Texas. Am. Compl., ¶¶ 36-38.

**2. Traceability**

The injury is also traceable to Defendants' actions. This element of standing is met when there is a "causal connection between the injury and the conduct complained of," and the injury is not the "result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). Although standing may be denied if an injury is "*solely* attributable to the plaintiff," it is not the case that "every infirmity in the causal chain deprives a plaintiff of standing." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000) (cleaned up). In particular, "standing is not defeated merely because the plaintiff has in some sense contributed to his own injury." *Id.* (cleaned up). The causal chain is broken by plaintiff's conduct only if the injury is "so completely due to plaintiff's own fault" that it cannot be said that defendants' conduct "contributed to causing the injury." *Id.*

Here, Defendants argue that the causal chain between their lawsuit and Plaintiff's injury was broken when Plaintiff chose to cease its busing operations. Def. Mem. at 24-25. Defendants did not obtain an injunction requiring Plaintiff to stop transporting migrants, nor did it obtain a damages award against Plaintiff. According to Defendants, Plaintiff's injury was therefore entirely self-inflicted. *Id.*

Accepting the allegations in the Amended Complaint as true, however, the state court lawsuit at a minimum contributed to the alleged injury. It was the lawsuit that caused Plaintiff to halt its operations and thereby lose its contract with Texas. Am. Compl., ¶¶ 36-38. Therefore, the required "causal connection" between the injury and Defendants' conduct exists. *Lujan*, 504 U.S. at 560.

Defendants rely on *Holcombe v. Ingredient Sols., Inc.*, in which the Second Circuit held that the plaintiff's decision to resign from her position broke the causal chain between her prior employer's alleged misconduct and the lost commissions at issue in the case. 797 Fed. App'x 630, 633 (2d Cir. 2020) (summary order). *Holcombe* is distinguishable, however. In *Holcombe*, the plaintiff's decision to quit her job was voluntary. *Id.* ("Holcombe's decision to leave ISL, even if reasonable, was not undertaken to avoid an economic or reputational injury that was 'certainly impending' at the time she left." (citation omitted)). In the instant case, Plaintiff alleges that Defendants' coercive and unconstitutional conduct—initiating a legal challenge to Plaintiff's business operations—was the sole reason Plaintiff stopped busing migrants. Am. Compl., ¶ 77. Facing even a potential $708 contingent liability imperiled Plaintiff's ability to secure bonds for bidding on contracts and obtain insurance, and placed its banking relationships at risk; had the lawsuit been successful, Plaintiff would have been unable to continue operating. ECF No. 37 ("Pl. Opp'n") at 12. Indeed, Plaintiff alleges that this was Defendants' motivation in bringing the suit, to compel Plaintiff to cease its operations under threat of ruinous financial consequences. Am. Compl., ¶ 71. Because the Court assumes the truth of

these factual allegations at the pleading stage, the Amended Complaint sufficiently pleads traceability.

**3. Redressability**

Plaintiff easily meets the redressability requirement. Defendants contend that, because "there is no allegation that Plaintiff seeks to transport individuals to the City in the future or that the City would seek to enjoin them[, t]here is no relief that this Court could grant to redress the injury." Def. Mem. at 25. Defendants ignore that Plaintiff seeks monetary damages. Am. Compl. at 25. It is well-established that even nominal damages confer standing upon a party challenging a violation of rights. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021). Compensatory damages can certainly redress Plaintiff's injuries. *See Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001).

* * *

Although Plaintiff, in its opposition papers, briefed issues related to *Monell* liability and whether the Amended Complaint sufficiently pleads a claim under Section 1983, Pl. Opp'n at 19-23, none of these issues were raised in Defendants' moving papers. The sole basis on which Defendants move to dismiss the Section 1983 claim is lack of subject matter jurisdiction. Accordingly, having found standing, the Court denies the motion to dismiss the Section 1983 claim.

**C. Tortious Interference with Contract**

Plaintiff brings claims for tortious interference with contractual relations and tortious interference with contract. Under New York law, tortious interference with

contract and tortious interference with contractual relations are the same claim with the same required elements. The Court therefore analyzes both claims together.

To state a claim for tortious interference with contract or contractual relations in New York, plaintiffs must allege the following elements: "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract, and (5) damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126-27 (2d Cir. 2019) (tortious interference with contract) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)); *see also G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 767 (2d Cir. 1995) (tortious interference with contractual relations).[1]

Plaintiff's tortious interference with contract claim fails because Plaintiff has not made any allegations that a third party breached the contract, or that Defendants interfered in a way intended to cause a third party to breach. Instead, Amended Complaint alleges that Plaintiff itself breached its contract with Texas

[1] In *Kronos, Inc. v. AVS Corp.*, the Court of Appeals of New York combined the elements of intentional procurement of the breach and the breach itself into one element, for a total of four elements required in a claim for tortious interference with contract/contractual relations. *See* 81 N.Y.2d 90, 94 (1993). In *Lama*, the court separated intentional procurement of a breach and actual breach into two separate elements, thereby listing five elements required for the same claim. *See Lama Holding Co.*, 88 N.Y.2d at 424. The substantive analysis remains the same across New York case law.

when it ceased busing migrants, and that Defendants' lawsuit was initiated to force Plaintiff's breach by applying economic pressure to Plaintiff. Am. Compl., ¶¶ 37, 77.

"In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by *the other party*." *Jack L. Inselman & Co., Inc. v. FNB Fin. Co.*, 41 N.Y.2d, 1078, 1080 (1977) (emphasis added). Courts in this district have thus consistently dismissed complaints in which plaintiffs fail to plausibly allege interference by defendants intended to cause a third-party breach and/or an actual third-party breach. *See, e.g.*, *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 405 (S.D.N.Y. 2012) ("Plaintiff does not allege that any third party breached its contract, but instead alleges that *Plaintiff* breached its contracts with third parties . . . . Such an allegation is insufficient."); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) ("Counterclaim 4 fails to allege a breach of contract by [third party]; it only states that '[Defendant] lost the contract with [third party].'"); *Four Finger Art Factory, Inc. v. Dinicola*, 99-CV-01259 (JGK), 2000 WL 145466, at *6 (S.D.N.Y. Feb. 9, 2000) ("[T]here are no allegations in the Complaint as to what those mutual breaches were, or how they were caused by [the defendants.]").

Plaintiff argues that Defendants interfered by imposing an "extraordinary financial threat" that "made [Plaintiff's] contractual performance commercially impracticable." Pl. Opp'n at 15. Interference that renders performance impossible can support a claim for tortious interference with contract. *See Kronos Inc.*, 81 N.Y.2d at 94. Yet because a third-party breach is required to state a claim, any

interference that renders performance impossible must be directed toward the third party. *See Entercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 541 (2d Cir. 1989) ("Improper intentional interference is generally evidenced by a tortfeasor inducing or otherwise causing a third person not to perform his contractual obligations to plaintiff." (cleaned up)). Accordingly, Plaintiff has failed to plausibly allege tortious interference with contract or contractual relations.

**D. Tortious Interference with Prospective Relations**

In opposing the motion to dismiss, Plaintiff argues that the Amended Complaint adequately sets forth claims for tortious interference with prospective relations, prospective economic advantage, and business relations. Pl. Opp'n at 16-18. The Amended Complaint does not assert any such claims, however.

Allegations related to Defendants' interference with business relations appeared in Plaintiff's initial complaint, ECF No. 1, ¶¶ 56-58, but Plaintiff did not assert a separate claim for tortious interference with business relations or prospective relations, *see id.* Consequently, when Defendants filed their first motion to dismiss on August 13, 2025, ECF No. 20, they noted that the complaint did not explicitly state a claim for tortious interference with business relations separate from their tortious interference with contract claim, ECF No. 21 at 19. Given the references in the body of the initial complaint to interference with business relations, Defendants, nonetheless, "out of an abundance of caution," briefed the asserted deficiencies in any potential claim of tortious interference with business relations. *Id.*

The Court set a deadline for Plaintiff to amend its complaint in response to Defendant's original motion to dismiss and advised that "there will likely not be any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 22. Plaintiff amended the complaint and filed what is now the operative pleading on September 17, 2025. *See* Am. Compl. The Amended Complaint contains no mention of tortious interference with business relations, prospective relations or economic advantage. *See id.*

Tortious interference with prospective business relations or economic advantage is a separate claim from a tortious interference with contractual relations, with different required elements. *See Carvel Corp. v. Noonan*, 350 F.3d 6, 17-18 (2d Cir. 2003) (setting forth elements for tortious interference with prospective economic relations). Plaintiff elected to remove any mention of this claim from the Amended Complaint, doing so while on notice from Defendants about the issues raised in the first motion to dismiss (including Plaintiff's failure to clearly set forth a claim for tortious interference with business relations) and from the Court regarding a limited opportunity to amend the complaint. To the extent Plaintiff now belatedly seeks to add such a claim to this litigation, this request is denied.

**E. Abuse of Process**

Plaintiff alleges that Defendants' "legal action was improperly initiated for the express purpose to interfere with [Plaintiff's] lawful contractual relationships and federally protected rights." Am. Compl., ¶ 87. Plaintiff further alleges that

Defendants acted in bad faith in initiating their case and relying on "an outdated 19th-century pauper statute," because Supreme Court precedent had already declared such anti-pauper laws unconstitutional. *Id.*, ¶ 81. Plaintiff has not plausibly alleged abuse of process sufficient to survive a motion to dismiss.

Under New York law, an "abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Plaintiff claims that these elements are met because Defendants employed a regular legal process (initiation of a civil suit) and intended to interfere with Plaintiff's "right to freely move indigent migrants for hire in interstate commerce." Am. Compl., ¶¶ 82-84.

In New York, "the institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Curiano v. Suozzi*, 63 N.Y.2d 113, 114 (1984). Rather, "[p]rocess is a 'direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act.'" *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 106 (S.D.N.Y. 2020) (quoting *Williams v. Williams*, 23 N.Y.2d 592, 596 (1969) (citation omitted)). Consequently, a claim for abuse of process must involve an "unlawful interference with one's person or property under color of process." *Id.* (quoting *Williams*, 23 N.Y.2d at 596 (1969)). Such interference may include writs of attachment or execution, an arrest,

or sequestration. *Williams*, 23 N.Y.2d at 596 n.1. The filing of a complaint, without more, cannot form the basis for an abuse of process claim.

Furthermore, the "gist of the action for abuse of process . . . is the improper use of process after it is issued." *Curiano*, 63 N.Y.2d at 117 (cleaned up). While Plaintiff argues that Defendants "manipulated the civil process by using the courts to create an unlawful barrier on interstate travel," Pl. Opp'n at 18-19, the Amended Complaint does not allege that any "manipulation" beyond the filing of the complaint occurred, *see* Am. Compl., ¶¶ 80-87.

Plaintiff also argues that Defendants had a collateral objective in pursuing their lawsuit, as required for an abuse of process claim. Pl. Opp'n at 18-19; *see Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003). Without any allegation of actual misuse of a lawfully issued process, however, the allegation of a collateral objective does not move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Consequently, the filing of a complaint based on a then-effective state law, without more, does not state a claim for abuse of process.

## CONCLUSION

For the reasons stated herein, the Motion is **GRANTED** as to the claims for tortious interference with contractual relations (Count I), tortious interference with contract (Count II), and abuse of process (Count III). Those claims are dismissed for failure to state a claim. The Motion is **DENIED** as to the claims asserted under Section 1983 (Count IV).

The Clerk of Court is directed to terminate ECF No. 34.

SO ORDERED.

Dated: July 27, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge